UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CINDY LEE BACH, deceased, and JOHN N. BACH, widower,<br><br>       Plaintiff,<br><br>   v.<br><br>IDAHO STATE BOARD OF MEDICINE, STEVE J. WRIGHT**,** Individually and d/b/a WRIGHT, JOHNSON , TOLSON, AND WAYNE, agents/representative of Idaho State Board of Medicine and Teton Valley Health Care; TETON VALLEY HEALTH CARE; TETON COUNTY IDAHO; TETON COUNTY BOARD OF COMMISSIONERS: LARRY YOUNG, MARK TRUPP, & ALICE STEVENSON, and LARRY T. CURTIS, M.D.; CHAD ROGER HORROCKS, M.D. & ROBERT ANTHONY WOLFE, M.D.; TETON VALLEY HEALTH CARE BOARD OF TRUSTEES AND Chairpersons, C.E.O.'s C.F.O.'s, Managers and Agents: SUSAN KUNTZ, RACHAEL GONZALES, MICHAEL WHITFIELD, MITCH FELCHLE, DAWN FELCHLE, NANCY McCULLOUGH-McCOY, ROBERT EMERSON, LaNICE MURPHY, GORDIE GILLETTE, CALVIN CAREY, FLOYD BOUNDS, LAURA PIQET, and ANN LOYOLA; TETON COUNTY IDAHO CORONERS OFFICE, TIMOTHY MELCHER, NATALIE KAUFMAN, and agents A. FRANCI TRYKA, M.D., and ALICE NEUMANN, M.D., individually and d/b/a WESTERN WYOMING PATHOLOGY and ST. JOHNS' MEDICAL CENTER; TETON VALLY HOSPITAL DIRECTOR OF NURSES DEBRA TAYLOR, AND Nurses/Agents: | Case No. 4: 10-CV-548-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**Memorandum Decision and Order - 1**

| |
|---|
| MEMORY ALLEN, RENEE COVERT, KRISTEN IRVINE, N. aka NIKKI RIPPLINGER, KATRINE ST. JEON, AND K. SORENSEN; TETON VALLEY NEWS, PIONEER NEWSPAPERS, LLC, STACY SIMONET, and MICHAEL POLHAMUS |
| Defendants. |

## INTRODUCTION

The Court has before it the following Defendants' motions to dismiss: (1) Larry T. Curtis, M.D. (Dkt. 9); (2) Stacy Simonet (Dkt. 29); (3) Virgil Boss (Dkt. 40); (4) Pioneer Newspapers, LLC (Dkt. 73); (5) Chad Roger Horrocks, M.D. (Dkt. 81); (6) Renee Covert (Dkt. 82); (7) Kristen Irvine (Dkt. 83); (8) Nikki Ripplinger (Dkt.84); (9) Rachel Gonzales (Dkt. 89); (10) Susan Kuntz (Dkt. 90); (11) Teton Valley Health Care Board of Trustees (Dkt. 94); (12) Steven Dietrich (Dkt. 95); (13) Nancy McCullough-McCoy (Dkt. 96); (14) Gordie Gillette (Dkt. 97); (15) Mitch Felchle (Dkt. 99); (16) Floyd Bounds (Dkt. 100); (17) Laura Piquet (Dkt. 101) and (18) Ann Loyola (Dkt. 103). For the reasons explained below, the Court will deny the motions without prejudice and direct Plaintiff Bach to amend the Complaint. Bach's motions to strike (Dkt. 55 and 86) the motions to dismiss filed by Stacy Simonet and Pioneer Newspapers, LLC are also denied without prejudice.

## FACTUAL BACKGROUND

Plaintiff, John Bach, has alleged a conspiracy between all of the named defendants which "created a corrupt hospital [and] resulted in the abandonment, wrongful death, and

**Memorandum Decision and Order - 2**

homicide of" his wife, Cindy Lee Bach. *Compl.* ¶ 66, Dkt. 1. The conspiracy allegedly extends to the Idaho State Board of Medicine's prelitigation screening for medical malpractice claims and includes local media representatives. *Id.* at ¶ 45-46.

Prior to his wife's passing, Bach alleges that Teton Valley Health Care ("TVHC") "was in dire financial straits." *Id.* at ¶ 8. Many of the Defendants were allegedly aware of this situation. *Id.* at ¶ 8-10. Bach also asserts that many of the Defendants associated with TVHC were engaged in "money dissipations, laundering, and siphoning to past and present board of trustee members, agents, C.E.O, and C.F.O.'s, and members of defendant doctors and family cohorts." *Id.* at ¶ 9, 11. This allegedly created the "corrupt" state of TVHC when his wife was receiving medical care and died there. *Id.* at ¶ 66.

Bach's wife checked into the hospital on November 5, 2008. *Id.* at ¶ 12. Defendant Horrocks "diagnosed [her] with community acquired pneumonia." *Id.* at ¶ 17. Because Ms. Bach's condition appeared to be improving on November 6, Defendant Horrocks planned to release her on November 8. However, at 5 a.m. on November 8, Ms. Bach "was found unresponsive in her bed." *Id.* at 27. Defendant Wolfe's efforts to resuscitate her failed. *Id.* at ¶ 28-29. Thereafter, TVHC sent Ms. Bach's remains to the neighboring town of Jackson, Wyoming for autopsy. *Id.* at ¶ 31. Plaintiff alleges that this autopsy was performed incorrectly and that Teton County Deputy Coroner, Defendant Kaufman, "issued a misleading Certificate of Death." *Id.* at ¶ 36-37.

Bach filed an Application for Prelitigation with the Idaho State Board of Medicine on May 16, 2009. *Id.* at ¶ 39-40. His hearing was held on November 6, 2009. *Id.* Bach

**Memorandum Decision and Order - 3**

alleges that a conflict of interest existed among board members and that his hearing was terminated prematurely when he responded to the panel saying, "What part of 'no' don't you understand." [*sic*] *Id.* at ¶ 44.

Finally, Bach's conspiracy theory extends to Defendant TVN and those Defendants associated with it. TVN published an article titled "Bach controversy not yet settled," which reported the status of several cases Bach was involved in and noted both that he was a disbarred attorney and that he had a criminal history. *Def.'s Br.* Exhibit A, Dkt. 29-1.[1]

On November 8, 2010, Bach filed his claim with this Court, alleging violations of the following federal laws: U.S. Constitution; Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 (2006) ("RICO"); and Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 241 (codified as amended in scattered sections of 2 U.S.C., 28 U.S.C. and 42 U.S.C.). Bach has also alleged a state law medical malpractice claim.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic*

---

[1] "[E]ven if a document is not attached to a complaint, a defendant may offer it and the court may incorporate it by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Gibson v. Credit Suisse AG*, No. CV 10-1-EJL-REB, 2010 WL 1904773, at *2 (D. Idaho May 11, 2010) (internal quotations omitted). *See also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

**Memorandum Decision and Order - 4**

*Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

Two years after *Twombly* was decided, the Supreme Court identified two "working principles" that underlie *Twombly*. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* "Determining whether a complaint states a

**Memorandum Decision and Order - 5**

plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (issued two months after *Iqbal*).[2] The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

## ANALYSIS

The *Iqbal-Twombly* standard is settled law: "Our decision in *Twombly* expounded the pleading standard for all civil actions." *Iqbal*, 129 S. Ct. at 1953 (internal quotations omitted). It is clear Bach's counsel was unaware of the elevated pleading requirement

---

[2] The Court has some concern about the continued vitality of the liberal amendment policy adopted in *Harris v. Amgen*, based as it is on language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), suggesting that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim. . .." Given *Twombly* and *Iqbal*'s rejection of the liberal pleading standards adopted by *Conley,* a question arises whether the liberal amendment policy of *Harris v Amgen* still exists. Nevertheless, the Circuit has continued to apply the liberal amendment policy even after dismissing claims for violating *Iqbal* and *Twombly*. *See Market Trading, Inc. v. AT&T Mobility, LLC,* 2010 WL 2836092 (9th Cir. July 20, 2010) (not for publication). Accordingly, the Court will continue to employ the liberal amendment policy.

**Memorandum Decision and Order - 6**

when crafting the Complaint and defending it against these motions to dismiss. For example, Bach stated that "*Igbal* [*sic*] is absolutely not an applicable, relevant authority regarding the R.I.C.O. pleading violations." *Pl.'s Resp.* at 5, Dkt. 23. This position is incorrect. Further, the Complaint is replete with "labels[,] conclusions, and . . . formulaic recitation[s] of the elements of a cause of action," and that "will not do." *Twombly*, 550 U.S. at 555.

The present complaint is therefore deficient under *Iqbal/Twombly*. But the authority quoted above shows that Bach is entitled to an attempt to cure the deficiencies through an amended complaint. Accordingly, the Court will deny the motions to dismiss without prejudice, and direct Bach to file an amended complaint. The Court will deny the motions without prejudice because the Court anticipates that another round of those motions may be filed following the filing of an amended complaint.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Defendants' motions to dismiss (Dkt. 9, 29, 40, 43, 73, 81-84, 89, 90, 94-97, 99-101 and 103) are DENIED without prejudice.

IT IS FURTHER ORDERED, that Plaintiff's motions to strike (Dkt. 25, 55 and 86) are DENIED without prejudice.

IT IS FURTHER ORDERED, that Plaintiff shall file an amended complaint within 20 days from the date of this decision. If no amended complaint is filed by the deadline, the court will dismiss this matter without further notice.

DATED: July 22, 2011

B. Lynn Winmill
Chief Judge
United States District Court

**Memorandum Decision and Order - 8**