IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CINDY LEE BACH, deceased, and JOHN N. BACH, widower;<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>IDAHO STATE BOARD OF MEDICINE, STEVE J. WRIGHT, Individually and d/b/a WRIGHT, JOHNSON , TOLSON, AND WAYNE, agents/representative of Idaho State Board of Medicine and Teton Valley Health Care; TETON VALLEY HEALTH CARE; TETON COUNTY IDAHO; TETON COUNTY BOARD OF COMMISSIONERS: LARRY YOUNG, MARK TRUPP, & ALICE STEVENSON, and LARRY T. CURTIS, M.D.; CHAD ROGER HORROCKS, M.D. & ROBERT ANTHONY WOLFE, M.D.; TETON VALLEY HEALTH CARE BOARD OF TRUSTEES AND Chairpersons, C.E.O..s C.F.O..s, Managers and Agents: SUSAN KUNTZ, RACHAEL GONZALES,MICHAEL WHITFIELD, MITCH FELCHLE, DAWN FELCHLE, NANCY McCULLOUGH-McCOY, ROBERT EMERSON, LaNICE MURPHY, GORDIE GILLETTE, CALVIN CAREY, FLOYD BOUNDS, LAURA PIQET, and ANN LOYOLA; TETON COUNTY IDAHO CORONERS OFFICE, TIMOTHY MELCHER, NATALIE KAUFMAN, and agents A. FRANCI TRYKA, M.D., and ALICE NEUMANN, M.D., individually and d/b/a WESTERN WYOMING PATHOLOGY and ST. JOHNS. MEDICAL CENTER; | Case No.  4:CV 10-548-BLW<br><br>**MEMORANDUM DECISION** |

TETON VALLY HOSPITAL DIRECTOR OF
NURSES DEBRA TAYLOR, AND
Nurses/Agents: MEMORY ALLEN, RENEE
COVERT, KRISTEN IRVINE, N. aka NIKKI
RIPPLINGER, KATRINE ST. JEON, AND K.
K. SORENSEN; TETON VALLEY NEWS,
PIONEER NEWSPAPERS, LLC, STACY
SIMONET, and MICHAEL POLHAMUS;

         Defendants.

## INTRODUCTION

The Court has before it motions to dismiss filed by all defendants.  The motions
are fully briefed and at issue.  For the reasons expressed below, the Court will grant the
motions and dismiss this action.

## FACTUAL BACKGROUND

Plaintiff John Bach claims that his wife, Cindy Lee Bach, died after receiving poor
medical care by the defendant doctors and nurses.  He claims that the poor medical care
resulted from financial corruption by those running the county-owned hospital, resulting
in a dysfunctional system that harmed patients.  His complaint alleges that a broad array
of defendants conspired to loot the county's health care system, including Teton County,
the Teton County Board of Commissioners, Teton Valley Health Care, and the Teton
Valley Health Care Board of Commissioners.  Additional alleged conspirators include
members of the media and the medical team responsible for the autopsy of Ms. Bach.
Bach also challenges the constitutionality of Idaho statutes setting up a pre-litigation

**Memorandum Decision - 2**

screening panel for medical malpractice cases and limiting the liability of governmental entities.

Prior to his wife's passing, Bach alleges that defendant Teton Valley Health Care ("TVHC") "was in dire financial straits." *Id.* at ¶ 8. He alleges that many of the defendants were aware of this situation. *Id.* at ¶ 8-10. He also asserts that many of the defendants associated with TVHC were engaged in "money dissipations, laundering, and siphoning to past and present board of trustee members, agents, C.E.O, and C.F.O.'s, and members of defendant doctors and family cohorts." *Id.* at ¶ 9, 11. This allegedly created the "dysfunctional" state of TVHC during the time when his wife was receiving medical care and died there. *Id.* at ¶ 77.

Bach's wife checked into the hospital on November 5, 2008. *Id.* at ¶ 17. Defendant Dr. Chad Horrocks "diagnosed [her] with community acquired pneumonia." *Id.* Because Ms. Bach's condition appeared to be improving on November 6, Dr. Horrocks planned to release her on November 8. However, at 5 a.m. on November 8, Ms. Bach "was found unresponsive in her bed." *Id.* at ¶ 32. Defendant Dr. Wolfe's efforts to resuscitate her failed. *Id.* at ¶ 33-34. Thereafter, the Teton County Coroner, Timothy Melcher sent Ms. Bach's remains to the neighboring town of Jackson, Wyoming for autopsy. *Id.* at ¶ 36. Bach alleges that this autopsy was performed incorrectly and that Teton County Deputy Coroner, defendant Natalie Kaufman, "issued a misleading Certificate of Death." *Id.* at ¶ 42.

Bach filed an application for pre-litigation screening with the Idaho State Board of

**Memorandum Decision - 3**

Medicine on May 16, 2009.  *Id.* at ¶ 45.  His hearing was held on November 6, 2009.  *Id.*

Bach alleges that a conflict of interest existed among board members and that his hearing

was terminated prematurely when he responded to the panel saying, "What part of 'no'

don't you understand?"  *Id.* at ¶ 49.

     Bach's conspiracy theory extends to defendant Teton Valley News ("TVN"), its

editor and reporter.  TVN published an article titled "Bach Controversy Not Yet Settled,"

which reported the status of several cases Bach was involved in and noted both that he

was a disbarred attorney and that he had a criminal history.  Bach alleges that these media

defendants "withheld information" from the public about the financial corruption at

TVHC, *id.* at ¶ 15, and published "outright falsehoods questioning Mr. Bach's integrity."

*Id.* at ¶ 52.

     Bach also alleges that the medical team responsible for Ms. Bach's autopsy was

part of the larger conspiracy discussed above.  He charges that they filed a false death

certificate and "attempted to conceal the cause of Cindy Bach's death by destruction of

evidence."  *Id.* at ¶ 82.

## IDENTIFICATION OF DEFENDANTS

     Bach has sued 42 defendants.  The following table organizes the defendants by the

roles they allegedly played in Bach's conspiracy allegations.

| **Table of Defendants** |
| --- |

| Role | Defendants |
|---|---|
| Treating Physicians | 1. Dr. Horrocks;<br>2. Dr. Wolfe |
| Nurses | 3. Memory Allen;<br>4. Renee Covert;<br>5. Kristen Irvine N. a/k/a Nikki Ripplinger;<br>6. Katrine St. Jeon;<br>7. K. Sorenson;<br>8. Debra Taylor |
| Operation of Teton Valley Hospital | 9.  Teton County (owns Teton Valley Hospital);<br>10. Teton County Board of Commissioners;<br>11. Teton Valley Health Care (TVHC);<br>12. Alice Stevenson;<br>13. TVHC Board of Commissioners;<br>14. Mark Trupp (member TVHC Bd. of Comms.);<br>15. Larry Young (member TVHC Bd. of Comms.);<br>16. Michael Whitfield (member TVHC Bd. of Comms.);<br>17. Mitch Felche (member TVHC Bd. of Comms.);<br>18. Ann Loyola (member TVHC Bd. of Comms.). |
| Pre-Litigation Screening Panel | 19. Idaho State Board of Medicine;<br>20. Steve J. Wright (Chairperson of Board and attorney). |
| Autopsy | 21. Teton County Coroner's Office;<br>22. Coroner Timothy Melcher;<br>23. Deputy Coroner Natalie Kaufman;<br>24. Dr. Alice Neumann (performed autopsy);<br>25. Western Wyoming Pathology (employed Dr. Neumann);<br>26. Dr. Franci Tyrka (employed Dr. Neumann);<br>27. St. Johns Medical Center (location of autopsy). |
| Media | 28. Teton Valley News (TVN);<br>29. Pioneer Newspapers LLC.;<br>30. Stacy Simonet (publisher/editor of TVN);<br>31. Michael Polhamus (reporter for TVN). |
| Assisting Media by Making False Statements | 32. Susan Kuntz;<br>33. Rachael Gonzales;<br>34. Dawn Felchle;<br>35. Nancy McZCullough-McCoy; |

**Memorandum Decision - 5**

| | |
|---|---|
| | 36.  Robert Emerson;<br>37.  LaNice Murphy;<br>38.  Gordie Gillette;<br>39.  Calvin Carey;<br>40.  Floyd Bounds;<br>41.  Laura Piqet. |
| Operating Medical Clinic that allegedly received preferential treatment in payment | 42.  Dr. Larry Curtis |

## LITIGATION BACKGROUND

On November 8, 2010, Bach filed his complaint with this Court, alleging violations of the U.S. Constitution; Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 (2006) ("RICO"); and the Civil Rights Act of 1964.  Bach also alleged a state law medical malpractice claim.

The defendants filed motions to dismiss.  After full briefing, the Court issued a decision finding that the complaint was deficient under *Iqbal* and *Twombly*.  The Court rejected Bach 's argument that *Iqbal* was inapplicable to the RICO claims, and held that Bach's complaint was replete with "labels[,] conclusions, and . . . formulaic recitation[s] of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.

The Court gave Bach an opportunity to cure these deficiencies, and he filed an amended complaint.  The defendants have responded with another round of motions to dismiss, claiming that the amended complaint contains the same deficiencies and should be dismissed under *Iqbal* and *Twombly*

**Memorandum Decision - 6**

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1965.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly*. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of

**Memorandum Decision - 7**

discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950.

Second, only a complaint that states a plausible claim for relief survives a motion to

dismiss. *Id.* "Determining whether a complaint states a plausible claim for relief will . . .

be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.*

A dismissal without leave to amend is improper unless it is beyond doubt that the

complaint "could not be saved by any amendment." *Krainski v. Nevada ex rel. Bd. of

Regents*, 616 F.3d 963 (9th Cir. 2010)(issued after *Iqbal*).[1]  The Ninth Circuit has held

that "in dismissals for failure to state a claim, a district court should grant leave to amend

even if no request to amend the pleading was made, unless it determines that the pleading

could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe,

Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990).

The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence

to support the claims. *See Hydrick v. Hunter*, 466 F.3d 676, 685 (9th Cir. 2006).

## BACH'S AMENDED COMPLAINT

Bach's amended complaint contains the following claims:

**Count 1**:        Seeks a declaratory judgment and injunctive relief on the ground that Idaho

---

[1]  The Court has some concern about the continued vitality of the liberal amendment policy based as it is
on language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), suggesting that "a complaint should not be
dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of
facts in support of his claim . . . ."  Given *Twombly* and *Iqbal*'s rejection of the liberal pleading standards
adopted by *Conley,* a question arises whether the liberal amendment policy still exists.  Nevertheless, as
the *Krainski* case cited above shows, the Circuit has continued to apply the liberal amendment policy
even after dismissing claims for violating *Iqbal* and *Twombly*.  Accordingly, the Court will continue to
employ the liberal amendment policy.

Code §§ 6-1001 through 6-1016 violate Bach's due process and equal protection rights, among other constitutional defiencies.  These statutes establish (1) the pre-litigation screening panel for medical malpractice cases and (2) the community standard of care in such cases.

**Count 2**:    Seeks a declaratory judgment and injunctive relief on the ground that Idaho Code §§ 6-917, 6-918, and 6-922 through 6-929 are unconstitutional because, among other things, they limit Bach's access to court.  These statutes limit the liability of governmental entities and discuss various aspect of their insurance coverage.

**Count 3**:     Claims that all defendants are engaged in a RICO enterprise to conceal corruption in the Teton County medical profession and to conceal the true cause of Cindy Bach's death.

**Count 4**:    Claims that all defendants were functioning as state actors when they caused the death of Cindy Bach and thereby deprived her of her constitutional right to life, and deprived John Bach of various constitutional rights.

**Count 5**:    Alleges a state law tort claim of wrongful death against all defendants.

## ANALYSIS

### Count One

Bach seeks declaratory and injunctive relief in Count One on the ground that certain Idaho statutes are unconstitutional, but he has failed to name as a defendant the

**Memorandum Decision - 9**

State, its Attorney General, or any State agency.  While he argues that the defendants have "benefited" from the operation of these statutes, that is not sufficient to overcome his failure to name the proper defendant.  *See Ex parte Young*, 209 U.S. 123 (1908) (state attorney general is proper party defendant to a suit for prevention of the enforcement of an allegedly unconstitutional state statute).  Because Count One does not state a claim against any of the named defendants, Count One must be dismissed.

## Count Two

Count Two suffers from the same flaw as Count One and will likewise be dismissed.

## Count Three

In Count Three, Bach claims that all defendants violated RICO.  Liability under RICO  hinges on whether the defendant engaged in a "pattern" of "racketeering activity" through specific designated offenses.  *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550 (9th Cir. 2010).  The term "racketeering activity" means activities that could be charged under the federal and state criminal statutes listed in 18 U.S.C. § 1961.  *Id*. at 557.  A "pattern" requires at least two acts of "racketeering activity" within ten years of each other.  *See* 18 U.S.C. § 1961(5).

A RICO claim based on fraud must meet the standard set by Rule 9(b).  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir.2004).  In addition, the Circuit has recognized that Rule 9(b) applies to claims – that although lacking fraud as an element – are "grounded" or "sound" in fraud.  *Vess v. Ciba-Geigy Corp*., 317 F.3d 1097, 1103-04

(9th Cir.2003).  The *Vess* case held that Rule 9(b) applies to a RICO claim where the plaintiff alleges a "unified course of fraudulent conduct" and "rel[ies] entirely on that course of conduct as a basis of the  claim."  *Id.*  Bach's RICO claim alleges a "unified course of fraudulent conduct" in that it charges the defendants with a conspiracy to defraud the taxpayers by looting the Teton County health care system and covering up the corruption.  All of Bach's RICO claims relate to this unified course of fraudulent conduct.

Rule 9(b) "demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Id.* at 558.  Accordingly, to avoid dismissal for inadequacy under Rule 9(b), the complaint must state the time, place, and specific conduct that comprises the racketeering activity of that defendant.  *Id.*

Rule 9(b) does not allow a complaint to merely lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . .  and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  *Swartz v. KPMG LLP,* 476 F.3d 756, 764-65 (9th Cir. 2007).  A plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme."  *Id.* at 765.

Bach's RICO claim fails to comply with Rule 9(b).  His allegations lump the defendants together and make conclusory statements about their liability that are insufficient as a matter of law.  *Swartz*, 476 F.3d at 765 (holding that RICO allegations

**Memorandum Decision - 11**

that defendants were "acting in concert with [two defendants]" and "knew that [the two defendants] were making false statements" were insufficient as a matter of law to satisfy Rule 9(b)).

Moreover, RICO requires Bach to identify for each defendant the "racketeering activity" engaged in by that defendant.  In other words, Bach must identify the violations of the criminal statutes listed under 18 U.S.C. § 1961 that the defendant committed and that constitute the "racketeering activity" required by RICO.

Bach has alleged that "[n]ot knowing the full extent of Mrs. Bach's medical condition, Drs. Horrocks, Wolfe, and the nursing staff abandoned Cindy Bach resulting in her wrongful death and homicide."  *See Amended Complaint, supra*, at ¶ 114.  Bach does not explain how the medical staff's failure to check on Cindy Bach more often constitutes a homicide under Idaho law; he fails to identify the applicable Idaho law governing homicide, the elements of the offense, and the manner in which each defendant committed each element of the offense.

The same deficiencies exist for his charge of "criminal and illegal activities of money dissipations, laundering, and siphoning to past and present board of trustee members, agents, C.E.O., and C.F.O..s, and members of defendant doctors and family cohorts."  *Id*. at ¶ 9.  Again, those allegations fail to allege what specific acts were done by a particular defendant that violated any of the state and federal statutes listed under § 1961.  Bach's amended complaint fails to identify the required "racketeering activity" of each defendant and thus fails to state a claim under RICO.

**Memorandum Decision - 12**

For all of these reasons, Count Three alleging RICO violations must be dismissed.

## Count Four

In Count Four, Bach alleges a claim under §1983 for both himself and his wife. To state a claim under §1983, Bach must show that the defendants, through conduct sanctioned under the color of state law, deprived him of a federal constitutional or statutory right. *See Parratt v. Taylor,* 451 U.S. 527, 535 (1986).

Bach alleges that all defendants were acting under color of state law when they (1) deprived Cindy Bach of her constitutional right to life, *id*. at ¶ 92, and caused her to suffer "great bodily and emotional pain as she tried to breathe," *id*. at ¶ 97, and (2) deprived John Bach of his constitutional right to the pursuit of happiness by killing his wife. *Id*. at ¶ 126; *see also Bach Response Brief (Dkt. No. 240)* at p. 7.

The §1983 claims of Bach's wife survive her death only if survival is authorized by the applicable state law. *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir.1998) (holding that the party filing a survival action under §1983 bears the burden of showing that the applicable state law authorizes the survival action). Under Idaho law, her claims do not survive her death. *Evans v. Twin Falls County*, 796 P.2d 87 (Id.Sup.Ct. 1990). Thus, Bach's claims on behalf of his wife must be dismissed.

On behalf of himself, Bach alleges that the medical staff should have checked on Cindy Bach more often and botched her intubation, resulting in her death. Assuming these allegations to be true, they merely state a claim for negligence or malpractice. Section 1983 "imposes liability for violations of rights protected by the Constitution, not

for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). The Constitution does not protect against medical malpractice. *Estelle v. Gamble,* 429 U.S. 97 (1976).

Although Bach does allege that the defendants were deliberately indifferent to the medical needs of Cindy Bach, his own amended complaint offers nothing to support that claim. Deliberate indifference is a higher standard than even gross negligence because it requires a culpable mental state, meaning that the state actor must recognize an unreasonable risk and actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff. *Toguchi v. Chung,* 391 F.3d 1051, 1057–58, 1060 (9th Cir.2004). Bach makes no allegation that any particular defendant intended to expose Cindy Bach to the risk of death or great bodily injury.

However, even if Bach has sufficiently alleged deliberate indifference, the defendants are still entitled to qualified immunity. Government officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The constitutional right at issue must be "clearly established" at the time of the alleged misconduct. *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011).

Bach claims that he was deprived of his constitutional right to the companionship of his wife. He cites no Ninth Circuit or Supreme Court authority holding that he has such a constitutional right; courts from other jurisdictions are split. For example, Judge

Posner in the Seventh Circuit rejected an argument similar to Bach's in *Niehus v. Liberio*, 973 F.2d 526, 534 (7th Cir.1992); *see also*, *Norcross v. Town of Hammonton*, 2006 WL 1995021 (D.N.J. 2006)(holding that husband had no constitutional right to association with his wife). Yet in *Pahle v. Colebrookdale Township*, 227 F.Supp.2d 361, 381 (E.D.Pa.2002), the court held that a "husband or wife should be able to claim violations of his or her own constitutional rights under §1983 for unlawfully, government-imposed injuries to a spouse that have a devastating impact on their marriage." A third path was taken in *Soto v Flores*, 103 F.3d 1056 (1st Cir. 1997). There, the court held that "the death of a family member will not ordinarily give those still alive a cognizable due process claim under section 1983" unless the defendants' actions were "specifically aimed at ending or affecting [one family member's] relationship with [another family member]." *Id*. at 1062.

This analysis shows that courts have at least three different approaches to the issue, and the parties have not cited any binding precedent from the Ninth Circuit or the Supreme Court. Given this disarray in the law over the constitutional issue, there was no "clearly established" constitutional right to the companionship of a spouse at the time Cindy Bach passed away. Accordingly, the defendants have qualified immunity and Bach's §1983 claim must be dismissed.

## Count Five

Count Five is a state law claim for wrongful death. Because this case is based on federal question jurisdiction, *see Amended Complaint, supra*, at ¶ 1, and because all

**Memorandum Decision - 15**

federal claims have now been dismissed, the Court will exercise its discretion under 28 U.S.C. § 1367(c)(3) to dismiss the remaining state law claim.

**Motion to Withdraw**

The counsel for Bach has filed a motion to withdraw.  Given the Court's decision to grant the motions to dismiss, this motion to withdraw is moot.  Whatever continuing relationship counsel has with his client will be a matter between them – including whether counsel will pursue an appeal on Bach's behalf and whether counsel will pursue the state law claims in state court.

**Conclusion**

For all of these reasons, the Court will grant the motions to dismiss filed by the defendants in a separate Judgment required by Rule 58(a), and declare the motion to withdraw moot.

DATED:  **January 20, 2012**



Honorable B. Lynn Winmill
Chief U. S. District Judge